[S. F. No. 21662. In Bank. July 16, 1964.]

BRADFORD CRITTENDEN, as Commissioner of the Department of California Highway Patrol, et al., Petitioners, v. THE SUPERIOR COURT OF MENDOCINO COUNTY, Respondent; THOMAS A. GRUNDY, Real Party in Interest.

Stanley Mosk, Attorney General, Edward P. O'Brien and Charles W. Rumph, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Edward A. Friend for Real Party in Interest.

TOBRINER, J.—Grundy, real party in interest, operates a restaurant, service station, and motel, known as Grundy's Resort, on the west side of U.S. Highway 101, near Leggett, in Mendocino County. In November 1963 the California Highway Patrol began to issue parking citations under Vehicle Code section 22502 to northbound vehicles parking on the left side of the highway in front of Grundy's Resort. Alleging that as a consequence of the highway patrol's misapplication of section 22502 northbound trucks refuse to stop at Grundy's Resort, thus diminishing his business by 30 per cent, Grundy filed a complaint for an injunction against the highway patrol.

Overruling the highway patrol's demurrer to the complaint, the trial court granted a preliminary injunction which restrained the highway patrol from enforcing Vehicle

Code section 22502 against patrons of Grundy's business. The court concluded that because Grundy suffered sustantial economic injury he could legally challenge the highway patrol's application of the section and that the patrol had misapplied it. The patrol now seeks a writ of prohibition to restrain the Superior Court of Mendocino County from proceeding with Grundy's action.

This case presents two principal issues: first whether Grundy suffered an injury by the misapplication of section 22502 which affords him standing to challenge its enforcement; and second, assuming such standing, whether the highway patrol in fact unlawfully applied that section. As we shall explain, we have concluded that Grundy may properly challenge the allegedly unlawful application of section 22502, but that the highway patrol in the instant case properly applied the section.

As to the preliminary question of the propriety of issuance of a writ of prohibition, the cases have held that the writ may issue if the lower court proceeds in excess of its jurisdiction and the petitioner cannot avail himself of any other adequate remedy. (Code Civ. Proc., §§ 1102, 1103; *Kennaley* v. *Superior Court* (1954) 43 Cal.2d 512, 514 [275 P.2d 1]; *City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294].)

In fixing the scope of the term jurisdiction in the above formulation we have said that it " ... has a broader meaning when used in considering the availability of prohibition to review an order than when used in determining whether a court lacks power in the fundamental sense, i.e., whether it has jurisdiction over the subject matter and the parties. . . . Any acts which exceed the power of a court, whether defined by statute or by rules developed and followed under the doctrine of *stare decisis,* may be restrained by prohibition. . . . " (*Tidewater Assoc. Oil Co.* v. *Superior Court* (1955) 43 Cal. 2d 815, 821 [279 P.2d 35].)

Since the highway patrol, as we shall demonstrate below, properly applied Vehicle Code section 22502 to trucks parking next to Grundy's Resort, the trial court exceeded its power in prohibiting the enforcement of the section. In the closely analogous case of *City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294], we issued a writ of prohibition to restrain the superior court from preventing the board of permit appeals from granting a building permit. We said: "If the action of

the board of permit appeals in [granting a permit] ... was within its lawful discretion, it follows that the superior court was about to act in excess of its authority and hence beyond its jurisdiction in attempting to control such action by mandate, and that prohibition will lie to test the matter. . . .'' (*Id.* at p. 244.)

Moreover, petitioner clearly lacks any other adequate remedy. The order of the trial court prevents the patrol from enforcing a valid Vehicle Code section designed to maintain highway safety. The risk of highway accidents increases with the delay in resolving the dispute. '' . . . [P]ublic interest has indicated the necessity for prompt settlement of the issue. [Citations.]'' (*City & County of San Francisco* v. *Superior Court* (1951) 38 Cal.2d 156, 160 [238 P.2d 581].)

 Accepting as true Grundy's allegation that the application of section 22502 subjects his business to substantial loss, we must recognize his standing to sue. A legion of cases establishes and enforces the entrepreneur's property right of access to, and expectancy of customers. (E.g., *McKay Jewelers, Inc.* v. *Bowron* (1942) 19 Cal.2d 595 [122 P.2d 543, 139 A.L.R. 1188]; *Guillory* v. *Godfrey* (1955) 134 Cal. App.2d 628 [286 P.2d 474]; see *Uptown Enterprises* v. *Strand* (1961) 195 Cal.App.2d 45 [15 Cal.Rptr. 486]; 4 Rest., Torts (1939) § 766.) Injunctive relief lies to prevent improper diversion of customers by private competitors (see e.g., *Guillory* v. *Godfrey, supra,* 134 Cal.App.2d 628; 4 Rest., Torts, *supra,* § 766), or even to restrain law enforcement officials from acting beyond the scope of their authority. (See *Uptown Enterprises* v. *Strand, supra,* 195 Cal.App.2d 45; *Pon* v. *Wittman* (1905) 147 Cal. 280, 292 [81 P. 984, 2 L.R.A. N.S. 683].) Similarly, the owner of a business may enjoin the enforcement of an unconstitutional or void statute or ordinance which deprives him of effective access to his customers (*McKay Jewelers, Inc.* v. *Bowron, supra,* 19 Cal.2d 595) or which otherwise causes irreparable injury to his business. (*Golden Gate Sightseeing Tours, Inc.* v. *City & County of San Francisco* (1937) 21 Cal.App.2d 582 [69 P.2d 899]; *Wade* v. *City & County of San Francisco* (1947) 82 Cal.App.2d 337 [186 P.2d 181]; *Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [295 P. 14].)

Relying upon the eminent domain and inverse condemnation cases, the highway patrol contends, however, that property owners cannot support a compensable interest in the flow of traffic in front of their property. (E.g., *People* v. *Russell* (1957) 48 Cal.2d 189 [309 P.2d 10]; *People* v. *Ayon*

(1960) 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519].) The cited cases do not, however, apply to the instant situation. The eminent domain and inverse condemnation cases involve injury to the property owner as a consequence of legitimate and beneficial public works. In such cases the courts deny recovery to the property owner because the interests of the public far outweigh his claim to compensation. Whether a particular interference with the plaintiff's property rights constitutes a compensable taking for public use turns upon a balancing of the degree of harm to the property owner against the legitimate interests of the state.

 In the instant case, however, the assumed illegality of the state's activities destroys its assertion of interest. The illegal activity of the state can no more find a haven in "public" benefit than can that of a private person; its interest in engaging in illegal activities deserves no greater protection than like conduct of private persons.

 The highway patrol further contends that Code of Civil Procedure section 526 and Civil Code section 3423 preclude issuance of an injunction "To prevent the execution of a public statute by officers of the law, for the public benefit." As to questions of standing, however, these sections, "do not apply when the activity sought to be enjoined is an attempt to apply a statute or ordinance to conduct not within its terms. [Citations.]" (*MacLeod* v. *City of Los Altos* (1960) 182 Cal.App.2d 364, 369-370 [6 Cal.Rptr. 326].)

 Turning to the second issue stated above, the interpretation of Vehicle Code section 22502, we note the language of the section: "Except as otherwise provided in this chapter every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be stopped or parked with the right-hand wheels of such vehicle parallel with and within 18 inches of the right-hand curb. *Where no curbs or barriers bound any roadway, right-hand parallel parking is required unless otherwise indicated. . . .*" (Italics added.)

The gravamen of the dispute lies in the meaning to be affixed to the phrase "unless otherwise indicated." Grundy contends that the section must be read to mean that right-hand parking is required "unless otherwise indicated" by physical conditions along the roadway. The highway patrol argues to the contrary that right-hand parking is required "unless otherwise indicated" by a sign placed by appropriate public officials. It concedes that road conditions preclude

right-hand parallel parking by northbound traffic opposite Grundy's Resort.

Grundy's analysis renders section 22502 virtually unenforceable and highly provocative of danger. It leaves law enforcement officials and highway users without ascertainable standards for determining the circumstances under which road conditions preclude right-hand parallel parking. Further, such interpretation engenders dangerous highway hazards. Grundy's interpretation necessarily vests the right of an initial determination in the individual highway user. Thus the individual's unguided and uncontrolled decision that right-hand parallel parking is impossible, because unsafe, or perhaps because available parking spaces are occupied, would permit him to park on the left-hand side of the road. Such left-hand parking surely poses a substantial highway hazard. The vehicle must not only turn in front of oncoming traffic in order to reach the parking area, but to return to the highway must pass across the left-hand lane and merge with the traffic in the right-hand lane.

In any event, Grundy's argument rests upon the unwarranted assumption that when right-hand parallel parking is not required, section 22502 necessarily *authorizes* left-hand parking. Even if we adopt Grundy's contention that road conditions may prevent right-hand parallel parking, the section does not sanction left-hand parking; to the contrary, the appropriate highway authority retains the discretion under section 22502 to permit or preclude left-hand parking.

In the absence of prior authoritative judicial interpretation of section 22502, we recognize the weight of the expert judgment of the highway patrol in applying the section. In the circumstances of this case section 22502 may reasonably prohibit left-hand parking.

The application for the peremptory writ of prohibition is granted as prayed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.

The petition of the real party in interest for a rehearing was denied August 12, 1964.